Charles PANKINS, Plaintiff–Appellant,

v.

Johnny M. JACKSON, et al., Defendants–Respondents.

No. 65526.

Missouri Court of Appeals, Eastern District. Division Three.

Jan. 10, 1995.

Rehearing Denied Feb. 15, 1995.

William P. Russell, St. Louis, for plaintiff-appellant.

Nathan S. Cohen, St. Louis, for defendants-respondents.

CRANDALL, Judge.

Plaintiff, Charles E. Pankins, appeals from the judgment, in a court-tried case, in favor of defendants, Johnny M. Jackson and Artinces Jewel Hawkins, in plaintiff's action for ejectment. He also appeals the trial court's judgment quieting title in favor of defendants. We reverse in part, and reverse and remand in part.

In 1972, Howard Pankins purchased a two-family flat located in the City of St. Louis ("property") on behalf of his brother, Charles Pankins. Charles Pankins provided the $5,000 down payment required for the purchase of the property.

On October 24, 1972, Howard Pankins and his wife executed a quit claim deed relinquishing their interest in the property to Charles Pankins and his wife. This deed was recorded February 13, 1973. The mortgage to the property held through Gershman Investment Company ("Gershman") remained in the name of Howard Pankins. This arrangement was made due to the inability of Charles to obtain credit in his own name.

Charles Pankins never lived at the property. He suffered a series of personal misfortunes and financial difficulties, followed by numerous hospitalizations for psychiatric treatment. From approximately 1973 to 1982, various family members lived at the property and made the mortgage payments.

In 1982, Gershman informed the Pankins of its intent to foreclose on the property because of a delinquency in the payments. Defendant Johnny Jackson, the nephew of Charles Pankins, testified that he made an oral agreement with Charles to acquire the property by paying the mortgage arrearages and giving Charles $5,000. Jackson paid the arrearages to Gershman. Jackson also delivered a cashiers check made out to Howard Pankins for $1,500, and Howard Pankins executed another quit claim deed releasing his interest in the property to defendant Jackson and defendant Artinces Hawkins, who was Jackson's mother and Charles' sister. Jackson testified that the $1,500 was his initial payment to Charles per their oral agreement, and that the balance of the $5,000 was paid to Charles in monthly installments of $100 over thirty-five months.

Charles characterized his oral agreement with Jackson as a rental agreement whereby Jackson would live in one flat, rent out the other for $250 per month, pay the monthly mortgage payment ($143) to Gershman, and send Charles $100 per month for rent. He testified that he received $100 per month from Jackson for approximately 24 months, but has received no payments since 1984 or 1985.

Jackson moved into the property in 1982 and continues to live there. Over the years,

Jackson has spent in excess of $5,000 for repairs, upkeep, and improvements to the property. In 1986, he executed a quit claim deed in favor of his mother, defendant Hawkins. In 1989, he made a final mortgage payment to Gershman. However, he failed to pay property taxes on the property for the years 1990 through 1992. When informed of the delinquent taxes, Charles Pankins paid them for 1990 and 1991.

On April 4, 1991, Charles Pankins brought an unlawful detainer action against defendant Jackson. He filed an amended petition for ejectment on August 29, 1991. On June 22, 1992, Jackson and Hawkins filed their petition to quiet title. The two actions were consolidated, and the case was court-tried. The trial court then entered judgment in favor of the defendants on plaintiff's petition for ejectment and on defendants' petition to quiet title. The court found in favor of plaintiff on a counterclaim he filed in connection with the quiet title action and ordered defendants to reimburse him for payment of delinquent taxes.

The plaintiff claims the trial court erred when it quieted title in defendants. The trial court found defendants possessed the property under a claim of ownership and color of title.

■ Even a good faith purchaser for value under a quitclaim deed obtains only the rights, title, or interests his grantor possessed at the time he conveyed the deed. *McAboy v. Packer*, 353 Mo. 1219, 187 S.W.2d 207, 209 (1945). Consequently, a grantee in a quitclaim deed takes title subject to and with notice of any prior outstanding equity or claim, not required to be recorded, and is not a purchaser without notice. *Id.* The general rule is that where a grantee receives a quitclaim conveyance, he takes the estate subject to all the disadvantages that it was liable to in the hands of the grantor, and the law will presume notice of all defects. *Id.* The fact that a grantor refuses to make a full and complete assurance of title is enough to arouse suspicion and put the grantee on notice. *Id.* 187 S.W.2d at 209–210.

Here, the defendants allegedly received their interest in the property through a quitclaim deed from Howard Pankins. Howard Pankins, however, did not possess any right, title or interest in the property when he signed the quitclaim deed because he had relinquished those rights in the prior recorded quitclaim deed. Therefore, the defendants did not obtain any rights in the property when Howard executed the quitclaim deed in their favor.

The defendants' argument that they were good faith purchasers for valuable consideration without notice is meritless because once a document is recorded, notice is imputed to all persons and subsequent purchasers. *Bremen Bank and Trust Co. v. Muskopf*, 817 S.W.2d 602, 608 (Mo.App.1991). Here, the prior quitclaim deed was *recorded*, so notice would be imputed to Jackson and Hawkins even if they had received a general warranty deed from Howard. Additionally, the law presumes notice whenever a quitclaim deed is used to convey title. *See McAboy*, 187 S.W.2d at 209. Because Howard did not make a full and complete assurance of title, the defendants should have investigated the chain of title. Had they done so, they would have discovered the prior recorded quitclaim deed and Charles' interest in the property.

■ In quiet title actions, plaintiffs must succeed on the strength of their own title and not on the weakness of their adversary's title, and the court determines better title between parties. *Hunott v. Critchlow*, 285 S.W.2d 594, 603 (Mo.1956). Under this analysis, Jackson cannot succeed in his action, because the execution of the prior quitclaim deed from Howard to Charles left Howard with no rights in the property to turn over to Jackson. Jackson's deed is therefore ineffective and Charles' claim is superior.

In their brief, defendants emphasize the evidence adduced at trial of an oral agreement between Charles and Jackson for the sale of the property. Assuming that such an oral agreement existed, it would fall squarely within the Statute of Frauds:

> No action shall be brought ... upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall

be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

§ 432.010, RSMo 1986. Here, no evidence of any written agreement, memorandum, or note concerning the sale was ever introduced at trial, nor was there any evidence of any signed authorization for Howard to act as Charles' agent. The agreement is therefore unenforceable because it did not comply with the Statute of Frauds.

The trial court erred in quieting title in defendants. Plaintiff's point is granted.

■ Plaintiff also contends the trial court erred when it found in favor of defendants in plaintiff's ejectment action. The trial court found that plaintiff was barred by the doctrine of laches and estoppel from claiming the right to possess the property.

■ In ejectment, plaintiff need only show that the defendant was in possession of premises to which plaintiff had right of possession. *Ashenhurst v. Johnson,* 167 S.W.2d 397, 399 (Mo.App.1942), *cert. quashed* under *State ex rel. Johnson v. Blair,* 351 Mo. 1072, 174 S.W.2d 851 (1943). If plaintiff has a legal right to possession of the property, appropriate relief, if merited, is a judgment for possession and damages. *Corbin v. Galloway,* 382 S.W.2d 827, 829 (Mo.App.1964).

Here, the plaintiff had a legal right to possession of the property because his quitclaim deed from Howard Pankins predated that of the defendants. It is undisputed that defendants have possession of the property, and that they are not paying plaintiff rent, nor do they have any written agreement with plaintiff concerning possession of the property.

Defendants assert that plaintiff's right of possession is defeated by laches and estoppel. *See Harris v. L.P. & H. Construction Co.,* 441 S.W.2d 377 (Mo.App.1969). "'Laches' is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done." *Lake Develop-*

*ment Enterprises, Inc., v. Kojetinsky,* 410 S.W.2d 361, 367 (Mo.App.1966). "Mere delay in asserting a right does not of itself constitute laches; the delay involved must work to the disadvantage and prejudice of the defendant." *Id.* at 368. While it is true that plaintiff did not commence his ejectment action until 1991, almost ten years after Jackson took possession, and six or seven years after plaintiff claims he received his last rental payment from Jackson, the facts reveal that plaintiff was hospitalized in various mental institutions during this time period and his inaction is explainable. Furthermore, it is not evident that Jackson was prejudiced or disadvantaged by plaintiff's inaction, as he enjoyed the possession of the property for approximately seven years for a modest monthly payment, and virtually rent-free since 1989. Plaintiff's point is granted.

The judgment of the trial court quieting title in defendants is reversed. The judgment in favor of defendants in plaintiff's action in ejectment is reversed and the cause is remanded with directions to enter judgment in favor of plaintiff. That portion of the judgment requiring defendants to reimburse plaintiff for payment of the delinquent taxes is also reversed.

CRANE, P.J., and DOWD, J., concur.