Elmer Henry **EVERHART** and Linda Sue Everhart, Respondents,

**Rick Crabb and Equity Mutual Insurance Company, Defendants,**

v.

Edward **WESTMORELAND** and Allstate Insurance Company, Intervenors–Appellants.

**No. WD 49052.**

Missouri Court of Appeals, Western District.

March 14, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application to Transfer Denied June 20, 1995.

G. Spencer Miller, Lisa Noel Gentleman, Miller, Dougherty & Modin, Kansas City, for appellants.

Daniel J. Matula, J. Courtney Bowlin, Kansas City, for respondents.

Before ULRICH, P.J., and KENNEDY and BERREY, JJ.

ULRICH, Presiding Judge.

This appeal arises from an action to reform a general release for loss of consortium signed by parents of an injured minor. Elmer and Linda Everhart executed the general release with Equity Mutual Insurance Company in settling their claims for an accident involving their minor son, Shane. In the reformation action, the Everharts and Equity Mutual reached a settlement and agreed to reform the release because it had resulted from their mutual mistake. After trial, the trial court accepted the proposed settlement and entered judgment ordering reformation of the release. Now appealing, the intervenors, Edward Westmoreland and Allstate Insurance Company, assert that the judgment rests on insubstantial evidence and involves misapplication of the law. The judgment is affirmed.

### Facts

In May 1986, Shane Everhart and three other young people were injured in a one-car accident while on a camping trip in the Ozarks. The accident left Shane with a brain stem injury; he died in 1990. When the accident occurred, Kimberly Westmoreland was behind the steering wheel of a car owned

by her stepfather; Chris Jackson sat in the front passenger seat; Shane and a young woman occupied the back seat. Rick Crabb, Kimberly's stepfather and owner of the car involved in the accident, had insurance with Equity Mutual. Also at the time of the accident, Edward Westmoreland, Kimberly's biological father, was driving his car on the same highway and was headed for the same destination. Mr. Westmoreland had insurance with Allstate.

Shortly after the accident, Tom Chappell, a claims representative for Equity Mutual, contacted the Everharts on behalf of Rick Crabb and Kimberly Westmoreland. During discussions, Mr. Chappell indicated that investigation had shown Kimberly to be solely responsible for the accident and that Equity Mutual was willing to settle with the Everharts for the policy limits of $50,000. Mr. Chappell also told the Everharts that they could hire their own attorney. The Everharts agreed to settle Shane's personal injury claim, in his behalf, for $35,000 and their loss of consortium claims for $15,000.

Equity Mutual hired Thomas A. Sweeny, an attorney, to represent Rick Crabb and Kimberly Westmoreland in finalizing the settlements. Based on his communications with Equity Mutual, Mr. Sweeny also believed that Kimberly Westmoreland was solely responsible for the accident. To effect the settlements, Mr. Sweeny prepared an agreement and two general releases. The general release of the Everharts' consortium claims, which is the subject of this appeal, named Rick Crabb and Equity Mutual as releasees, and released "all other persons, firms and corporations" from all liability stemming from the May 1986 accident. Mr. Sweeny provided the Everharts with copies of the settlement paperwork and encouraged them to seek independent counsel. Without engaging counsel, the Everharts signed before a notary the release for the consortium claims, and received the $15,000 in September 1986. Linda Everhart, as Shane's next friend, appeared in court in the minor's settlement action and received the · requisite court approval of the release and settlement of Shane's personal injury claim in January 1987.

Later in 1987 Linda Everhart, as Shane's next friend, sued Chris Jackson for his negligence in causing the May 1986 accident. That lawsuit resulted from newly discovered evidence that, at the time of the accident, Mr. Jackson actually controlled the steering wheel while Kimberly Westmoreland consulted a map. Mr. Jackson raised the defense of the general release executed in connection with the minor's settlement. In response, Ms. Everhart reopened the minor's settlement action, seeking to set aside the judgment and to modify the general release executed on Shane's behalf. Granting the requested relief, the trial court modified that release by striking the language that released "all other persons, firms or corporations," and by restricting that release to Kimberly Westmoreland and Rick Crabb. This court affirmed the judgment in *Everhart v. Crabb,* 775 S.W.2d 335 (Mo.App.1989).

After Shane died, the Everharts filed a wrongful death action against Edward Westmoreland in 1991. That lawsuit charged Mr. Westmoreland with negligence in the May 1986 accident for instructing Kimberly to follow his car. Mr. Westmoreland in turn asserted as a defense the general release executed by the Everharts for their consortium claims.

The Everharts then filed a separate action against Rick Crabb and Equity Mutual for reformation of that general release. That reformation action is the subject of this appeal. The Everharts and Equity Mutual eventually admitted that they had been mistaken about liability for the accident when they negotiated the settlement of their consortium claims. They agreed to reform the release, and submitted their proposed settlement to the trial court. Meanwhile, Edward Westmoreland and Allstate were allowed to intervene in the reformation action. The intervenors, Mr. Westmoreland and Allstate, counter-claimed and cross-claimed for a declaratory judgment upholding the general release and invalidating the proposed settlement.

At trial, the court heard the testimony of Mr. Sweeny and Ms. Everhart, received documentary evidence, and took judicial notice of records from related lawsuits. During

testimony, the two witnesses described their part in the settlement process. Mr. Sweeny noted that he had relied on information from Equity Mutual that Kimberly Westmoreland was solely responsible for the accident. Mr. Sweeny explained that he prepared a general rather than a special release based on the information from Equity Mutual, its instructions to effect the settlement, and conversations with Ms. Everhart. According to Mr. Sweeney, he would not have prepared a general release had he known of the possibility of other tortfeasors. In her testimony, Ms. Everhart emphasized that neither she nor Mr. Everhart had known about other tortfeasors, and neither had intended to release them when they agreed to settle their consortium claims.

In granting reformation, the trial court issued specific findings: (1) Equity Mutual informed the Everharts that Kimberly Westmoreland was solely responsible for the accident; (2) the Everharts and Equity Mutual were mistaken about Kimberly Westmoreland's sole responsibility; (3) the mistake was mutual and became a basic assumption in negotiating the settlement; (4) the general release was the product of mutual mistake requiring reformation; (5) the Everharts, Rick Crabb, and Equity Mutual reached a settlement that reforms the release. Concluding that reformation was appropriate, the trial court ordered that the release be reformed to restrict its coverage to Rick Crabb, Kimberly Westmoreland, passengers in the vehicle at the time of the accident, and persons insured by Equity Mutual.

### Appellants' Contentions

Appellants Edward Westmoreland and Allstate contend that the judgment granting reformation rests on insubstantial evidence and involves misapplication of the law. They maintain that the trial court improperly considered the Everharts and Equity Mutual's proposal to settle this reformation action. They assert that the findings on the elements essential to reformation lack clear, cogent, and convincing evidence to show the existence of a prior agreement and mutual mistake. They fault the trial court for relying on the judgment allowing modification in the minor's settlement action.

### Opinion

The equitable remedy of reformation allows parties to a contract to conform the writing to their intent. *St. Louis Realty Fund v. Mark Twain S. County Bank 21*, 651 S.W.2d 568, 572 (Mo.App.1983). For reformation on grounds of mistake, the primary factual issues to be established are the existence of a prior agreement and mutual mistake. *Kopff v. Economy Radiator Serv.*, 838 S.W.2d 449, 452 (Mo.App.1992). The equitable remedy of reformation presupposes a valid prior agreement evidencing a meeting of the minds. *Rainey v. Foland*, 555 S.W.2d 88, 91 (Mo.App.1977). The party seeking reformation need not show agreement on any particular words or language but must only show agreement to accomplish a particular object. *Duenke v. Brummett*, 801 S.W.2d 759, 765 (Mo.App.1991). The mistake must be mutual and common to both parties and must reveal that both parties did what neither intended. *Kopff*, 838 S.W.2d at 452. The party seeking reformation must show that the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the parties' true prior intentions. *Id.*

Ordinarily, the party seeking reformation bears the burden of proof by clear, cogent, and convincing evidence. *Hoffman v. Kaplan*, 875 S.W.2d 948, 951 (Mo.App.1994). Nevertheless, reformation is proper when all parties seek it or the defendant admits the mistake. 76 C.J.S. Reformation of Instruments § 23(b) (1994). The defendant's admission of mistake establishes that the plaintiff's version of the contract is the one intended by the parties. *Id.; 400 E. 58th St. Corp. v. Weiner*, 38 N.Y.S.2d 155, 156–57 (1942).

Mr. Westmoreland and Allstate contend that the Everharts and Equity Mutual's proposed settlement agreement was invalid and was improperly considered in granting reformation. In support, Mr. Westmoreland and Allstate cite *Rudisill v. Lewis*, 796 S.W.2d 124 (Mo.App.1990). In that case, the plaintiffs, who were involved in a multi-car collision, executed general releases with the in-

surance company of one driver; they then sued the second driver. *Id.* at 125. Before trial, the plaintiffs and the first driver's insurance company corrected the original releases limiting coverage to the persons named in the releases. *Id.* at 125–26. The second driver received summary judgment based on his assertion that the original general releases fully satisfied all claims and released all actual and potential tortfeasors from liability for the accident. The summary judgment was affirmed on appeal. *Id.* at 128.

The holding of *Rudisill* fails to control this case. In *Rudisill*, the plaintiffs failed to assert the validity of the corrected releases and never sought reformation. Here, the Everharts and Equity Mutual presented their proposed settlement to the trial court for approval and reformation. In a reformation action on grounds of mutual mistake, parol or extrinsic evidence is admissible to establish the mistake and to show how the writing should be reformed to conform to the parties' intention. *Duenke*, 801 S.W.2d at 766. Consequently, the trial court appropriately considered the proposed agreement in connection with other evidence for reformation.

Supporting their claims of insubstantial evidence on findings of prior agreement and mutual mistake, Mr. Westmoreland and Allstate complain about the absence of witnesses. They note that Elmer Everhart neither appeared at trial nor testified about his role in the negotiations or the circumstances attendant to his signing the general release. They stress the failure to call any agent or employee of Equity Mutual who had participated in the negotiations. They maintain that Thomas Sweeny's testimony was insufficient to establish mutual mistake because he did not participate in the actual negotiations. According to Appellants Westmoreland and Allstate, without testimony from two of the three parties to the release, the findings on prior agreement and mutual mistake lack substantial evidence to support the reformation. Further, they dispute the findings referring to the modification of the general release in the minor's settlement action. They contend that the trial court improperly

relied on findings in the earlier action in granting reformation in the present action.

In determining the propriety of granting reformation, the trial court has a duty to consider the wording of the contract as signed by the parties, the relationship of the parties, the subject matter of the contract, the usages of the business, the circumstances surrounding the execution of the contract, and its interpretation by the parties. *St. Louis 221 Club v. Melbourne Hotel Corp.*, 227 S.W.2d 764, 768 (Mo.App.1950). Reformation may be established by circumstantial evidence provided that the natural and reasonable inferences drawn from it clearly and decidedly prove the alleged mistake. 76 C.J.S. Reformation of Instruments § 82 (1994).

Here, the evidence for reformation included the general release signed by Elmer and Linda Everhart; the testimony of Ms. Everhart and Mr. Sweeny; the Everharts and Equity Mutual's proposed settlement; and records from the minor's settlement action. The absence of testimony from an employee or agent of Equity Mutual is inconsequential: Mr. Sweeny acting as scrivener for both parties is considered to be the agent of both parties. *Cox v. Cox*, 725 S.W.2d 880, 883 (Mo.App.1987). In their testimony, Ms. Everhart and Mr. Sweeny described their roles in settling the consortium claims. The records from the minor's settlement action provide additional background on the same negotiations. Contrary to Mr. Westmoreland and Allstate's assertions, the trial court appropriately took judicial notice of the minor's settlement records and noted its consideration of that evidence in its findings. The testimony, the records from the related actions, the general release itself, and reasonable inferences drawn from that evidence indicate that the Everharts and Equity Mutual entered into a valid agreement to settle their claims against those responsible for the accident who were insured by Equity Mutual. The combined evidence also shows that the general release failed to embody the parties' original intentions because of their common mistake that Kimberly Westmoreland alone was responsible for the accident. The Everharts and Equity Mutual's proposed settle-

ment agreement is consistent with the evidence, and constitutes an admission of mutual mistake. Substantial evidence supports the trial court's order reforming the general release.

Mr. Westmoreland and Allstate's claims on appeal are denied. The judgment is affirmed.

All concur.