Ishmael and Lois SMITH, Appellants,

v.

Charles and Carol J. SEAMSTER, Respondents.

No. WD 57931.

Missouri Court of Appeals, Western District.

Dec. 19, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 2001.

Seth D. Shumaker, Kirksville, for appellants.

Kimberly J. Nicoli, Memphis, for respondents.

Before HOLLIGER, P.J., BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

The trial court ordered Ishmael and Lois Smith (the Smiths) to vacate real property owned by the Estate of Charles Seamster and Carol J. Seamster (the Seamsters) [1] by removing personal property the Smiths had scattered over three to five acres of the Seamsters' land and to pay damages to the Seamsters in the amount of $1200 for the Seamsters' loss of use of the real property. On appeal, the Smiths argue that the Seamsters were not entitled to any damages because the Seamsters failed to mitigate their damages by not attempting to sell or rent the real property while the Smiths' personal property was scattered on it. Because this court finds that a party asserting a claim for ejectment has no duty to mitigate damages, the judgment of the trial court is affirmed.

## Factual and Procedural Background

The Smiths owned 40 acres of real property in Schuyler County. Located on the property was a wood-framed house, in which the Smiths resided. In 1993, the Smiths conveyed the property to their daughter and her husband, but retained a life estate in the residence. After the Smiths conveyed the property to their daughter, they moved from the residence into their son's trailer, which was also located on the property. On March 10, 1997, the Smiths' daughter sold the property to the Seamsters, subject to the Smiths' life estate in the residence. At the time of that sale, the Smiths had moved out of their son's trailer and were living in a home on another piece of property located in Downing, Missouri, where they continue to reside.

When the Seamsters purchased the property, the Smiths had various items of personal property scattered over three to five acres of the property. These items included two cars, a pick-up truck, cabs from pick-up trucks, two trailers with furniture in them, a camper shell, old tires, a tractor, part of a bulldozer, three combines, three grain heads, three corn heads, a grain bin, a stalk cutter, a corn picker, hammer mills, a mowing machine, other farm equipment, and scrap metal. Additionally, several outbuildings on the property that the Seamsters purchased were full of the Smiths' personal property.

The Seamsters notified the Smiths that they had purchased the land, and they

---

1. Mr. Seamster died in January 1999.

requested that the Smiths remove all of their personal property. The Smiths did not do so. On December 30, 1997, the Seamsters sent a notice of termination of tenancy to the Smiths, demanding possession of the land upon which the Smiths' personal property was placed. The Smiths did not remove their personal property from the land.

Instead, on November 2, 1998, the Smiths filed a petition in the circuit court alleging that the Seamsters had refused them access to the residence on the property by obstructing the driveway leading up to the residence. The Smiths asked the court to enjoin the Seamsters from obstructing their access to the residence.

On November 30, 1998, the Seamsters had the Schuyler County Sheriff's Department deliver a notice to vacate the premises to the Smiths. The Seamsters then filed an answer to the Smiths' petition. In their answer, the Seamsters denied that they had obstructed the Smiths' access to the residence. The Seamsters also filed a counterclaim for ejectment in which they requested that the court award them possession of the land upon which the Smiths' personal property was scattered, plus damages for waste and injury in the amount of $100 per month.

In October 1999, the Smiths filed an amended petition. Because Mr. Seamster had died in January 1999, the Smiths filed their amended petition against the Estate of Charles Seamster and Ms. Seamster. In addition to requesting that the court enjoin the Seamsters from obstructing the Smiths' access to the residence on the property, the Smiths requested in their amended petition that the court award them damages for the disrepair allegedly done to the residence since the Seamsters had denied the Smiths access to it, and for the Smiths' loss of use of the residence.

A bench trial was held on the Smiths' claim of obstructing access to real property and on the Seamsters' counterclaim for ejectment. The trial court subsequently entered judgment in favor of the Seamsters on both the Smiths' claim and on the Seamsters' counterclaim. With regard to the Seamsters' counterclaim, the court found that by leaving various items of personal property on the Seamsters' property, the Smiths had effectively denied the Seamsters the use of three to five acres of their real property. Consequently, the court awarded the Seamsters immediate possession of all of the real property except the residence. The court did allow the Smiths to go upon the Seamsters' property for a period of 60 days after the entry of the judgment for the limited purpose of removing their personal property from the real estate. The court further found that because the Seamsters had served the Smiths with a notice to vacate the property on November 30, 1998, the Seamsters were entitled to $100 a month in damages for loss of use of the property from that time forward, or $1200. The Smiths filed this appeal.

## Standard of Review

In a court-tried case, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment should be set aside only when this court firmly believes that the judgment is wrong. *Id.*

## The Seamsters Had No Duty to Mitigate Their Damages

The Smiths' sole point on appeal is that the trial court erred in awarding the Seamsters $1200 in damages. The Smiths argue that the Seamsters were not entitled to damages because the Seamsters failed to mitigate their damages by not attempting to rent or sell the land while the Smiths' personal property was on it.

To make a claim for ejectment, the "plaintiff need only show that the defendant was in possession of premises to which plaintiff had right of possession."

*Pankins v. Jackson,* 891 S.W.2d 845, 848 (Mo.App.1995). Here, Mr. Smith admitted at trial that he had a significant amount of personal property scattered over three to five acres of land owned by the Seamsters. It is undisputed that the Seamsters had title to those three to five acres of land, and thus had a legal right to possession of that land. *Id. See also* § 524.010, RSMo. 1994. Therefore, the Seamsters made a claim for ejectment.

■ In a claim for ejectment, appropriate relief may be a judgment for possession and damages. *Gilbert v. K.T.I., Inc.,* 765 S.W.2d 289, 293 (Mo.App.1988). Section 524.110, RSMo 1994, provides that such damages can include those for waste, injury, rents, and profits, subject to certain limitations on the length of time the damages can accrue. In this case, the court awarded the Seamsters possession of the three to five acres over which the Smiths' personal property was scattered, plus $1200 for the loss of the use of the property from November 30, 1998, the date that that the Seamsters served the Smiths with a notice to vacate the property.

■ The Smiths argue that before the court could award the Seamsters any damages, however, the Seamsters had to show that they made reasonable efforts to mitigate their damages by attempting to rent or sell the property over which the Smiths' personal property was scattered. The Smiths cite no statutory or case law for the proposition that a plaintiff asserting a claim for ejectment has a duty to mitigate its damages by attempting to rent or sell the disputed property. The purpose of an action for ejectment is to test the right to possession of real property. *Gilbert,* 765 S.W.2d at 293. To require the plaintiff to mitigate its damages by attempting to rent, let alone sell, the property over which it is trying to gain actual possession is incongruous with this purpose.

■■ As there is no authority for requiring mitigation of damages in an ejectment action, the Smiths attempt to characterize the Seamsters' cause of action as one for breach of a lease. The Smiths argue that the relationship between the Seamsters and themselves was that of a landlord and tenant. Under landlord-tenant law, when a tenant defaults on a lease, the landlord has three options: " '(1) [r]emain out of possession, treat the lease as subsisting and collect rent; (2) give notice to tenant, resume possession of the premises and attempt to relet in order to mitigate any damages; or (3) reenter, resume possession in its own right and, effectively, terminate the lease.' " *Blue Ridge Center Ltd. Partnership v. Zadeh,* 943 S.W.2d 357, 358 (Mo.App.1997) (quoting *MRI Northwest Rentals Investments I, Inc. v. Schnucks–Twenty–Five, Inc.,* 807 S.W.2d 531, 534 (Mo.App.1991)). The Smiths contend that the Seamsters chose the second option. They claim that after the Seamsters gave them notice to vacate on November 30, 1998, the Seamsters regained possession of the three to five acres and, at that point, assumed a duty to rent or sell the property.

This principle does not apply to the circumstances of this case for several reasons. First, the service of the notice to vacate did not cause the Seamsters to regain possession of the three to five acres over which the Smiths' vast amount of personal property was scattered. In fact, the Smiths' personal property remained scattered over the Seamsters' property through the trial in October 1999, effectively denying the Seamsters the use of that portion of their land.

Second, there was no lease agreement between the Seamsters and the Smiths that allowed the Smiths to leave their personal property on three to five acres of the Seamsters' land. Nevertheless, the Smiths argue on appeal that a landlord-tenant relationship arose because their possession of the Seamsters' real property created either a tenancy at will or a tenancy at sufferance. Again, the Smiths cite no authority for this proposition. Although the first written request to vacate

the property that the Seamsters sent to the Smiths on December 30, 1997, was entitled a "Notice of Termination of Tenancy," the trial court was not compelled to find that the notice to vacate created a tenancy. In fact, such a finding would be contrary to Mr. Smith's evidence at trial. Mr. Smith never testified that he believed he had a tenancy in the Seamsters' property. Rather, his basis for claiming an entitlement to the Seamsters' property was his mistaken belief that his life estate covered all of the Seamsters' property, and not just the wood-framed house on the property.

Moreover, the creation of a tenancy requires some form of consent from the landlord. *See Kiefer v. First Capitol Sports Center, Inc.,* 684 S.W.2d 483, 486–87 (Mo.App.1984). There is no evidence that the Seamsters consented to the Smiths' keeping their personal property scattered over the three to five acres. The Seamsters' lack of consent was particularly evident on November 30, 1998, when they had the sheriff's department deliver a notice to vacate the property to the Smiths. The trial court awarded the Seamsters damages from that point forward. As no landlord-tenant relationship existed between the Seamsters and the Smiths, the law requiring mitigation of damages before maintaining an action for breach of a lease does not apply to this case.

Because this court finds that the Seamsters' cause of action against the Smiths was for ejectment, and no duty to mitigate damages exists in a cause of action for ejectment, the judgment of the trial court is affirmed.

All concur.