**Joann ELTON, Respondent,**

v.

**Marcellus D. DAVIS, II and Rhonda K. Davis, Appellants.**

**No. WD 61987.**

Missouri Court of Appeals, Western District.

Oct. 14, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 2003.

Application for Transfer Denied Jan. 27, 2004.

208

Alan L. Markowitz, Kansas City, MO, for Appellants.

Keith W. Hicklin, Platte City, MO, for Respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, J.

Marcellus and Rhonda Davis appeal the judgment of the trial court in favor of Joann Elton on her claims for ejectment and reformation of deed and their counterclaim for adverse possession. The Davises raise five points on appeal. They contend that Mrs. Elton's claims were barred by the statute of limitations and the doctrine of laches. They also argue that the judgment was not supported by substantial evidence and was against the weight of the evidence. Finally, the Davises contend that the trial court erred in adjudging moot their counterclaim for adverse possession. The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

## FACTS

In 1978, Joann Elton and her late husband, Ronald Elton, acquired by deed certain real property located south and west of Platte City in Platte County. That property was legally described as:

All of Lots 5 and 6, of Fractional Section 3, Township 52, Range 35, Platte City, Missouri.

In 1987, the Eltons sold approximately two acres of this land to Marcellus and Rhonda Davis. Mr. Elton measured off the two-acre lot with his tractor computer starting on the east side of the lot where the Davises had started their construction and had placed their septic tank. A road bordered the south side of the lot. Mr. Elton placed a steel fence post on the west side of the lot to mark the western boundary. The Eltons executed a warranty deed to the Davises on November 6, 1987, convey-

ing the property, which was legally described as:

> Commencing at the Southeast corner of a tract of land described as all of Lots 5 and 6 of Fractional Section 3, Township 52, Range 35, Platte County, Missouri, thence West 370 feet to the point of beginning; thence North 348.5 feet; thence West 250 feet; thence South 348.5 feet; thence East 250 feet to the point of beginning.

After conveyance of the property, the Davises constructed buildings including a house and a driveway on the lot. The driveway was constructed on the east side of the steel post. The Davises also planted trees on the north side of the lot. They used the east side of the two-acre lot as a lawn and installed a swimming pool and a satellite dish on it.

Mr. Elton farmed the land surrounding the Davises' property as measured by Mr. Elton from the time the Davises purchased the property in 1987 until his death in 1995. After Mr. Elton's death, Mrs. Elton hired Hal Swaney to continue to farm the land until the time of trial in 2002. Specifically, the soybean crop line bordered the steel post and the Davises' driveway on the west side of their lot, the trees planted by the Davises on the north side of their lot, and a vent pipe on the east side of their lot.

After Mr. Elton's death in 1995, Mrs. Elton began to notice that the Davises periodically parked vehicles and trailers in the soybean field to the west of the steel post. As a result, Mrs. Elton had a survey done of the Davises' two-acre lot in July 2001. The survey showed a discrepancy between the legal description of the Davises' property in the deed and boundary lines established by Mr. Elton. The legal description in the deed showed that the Davises' property was situated fifty-three feet west of the boundary lines es-

tablished by Mr. Elton and maintained by the Davises. Specifically, the legal description included land to the west of the steel post, driveway, and crop line and did not include the eastern part of the Davises' lawn and swimming pool, or the septic tank and satellite dish.

As a result of the survey, Mrs. Elton filed a petition in ejectment in April 2002. She later amended her petition to add a count for reformation of deed. The Davises answered raising the affirmative defenses of statute of limitations and laches and counterclaimed for adverse possession of the land consisting of the eastern portion of their lawn and a narrow pie-shape strip of land on the northern border of the property maintained by the Davises.

Following a bench trial, the trial court entered its judgment on September 17, 2002, ordering reformation of the legal description in the deed to read as follows:

> Commencing at the Southeast corner of a tract of land described as all of Lots 5 and 6 of Fractional Section 3, Township 52, Range 35, Platte County, Missouri, thence 317 feet to the point of beginning; thence North 348.5 feet; thence West 250 feet; thence South 348,5 feet; thence East 250 feet to the point of beginning.

In essence, the corrected description shifted the Davises two-acre lot fifty-three feet east of the land described in the original deed to the location measured by Mr. Elton initially. The court also ordered the Davises ejected from all property not contained within the boundaries of the reformed legal description and entered judgment against the Davises on their affirmative defenses of statute of limitations and laches. Finally, the trial court found that the Davises' counterclaim for adverse possession was moot in light of the re-

formed legal description. This appeal by the Davises followed.

## STANDARD OF REVIEW

On review of a court-tried case, the judgment of the trial court will be affirmed unless substantial evidence does not support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Mullenix–St. Charles Properties, L.P. v. City of St. Charles*, 983 S.W.2d 550, 554–55 (Mo.App. E.D.1998). The evidence and inferences therefrom are viewed in the light most favorable to the prevailing party and all contrary evidence is disregarded. *Mullenix*, 983 S.W.2d at 555. The appellate court defers to the factual findings of the trial court, which is in a superior position to assess credibility, but evaluates independently the trial court's conclusions of law. *Id.* Finally, the appellate court should exercise the power to set aside a judgment on the ground that it is against the weight· of the evidence with caution and with a firm belief that the judgment is wrong. *Id.*

## I. STATUTE OF LIMITATIONS AND LACHES

In their first two points on appeal,[1] the Davises claim that trial court erred in entering judgment against them on their affirmative defenses of statute of limitations and laches. First, they argue that the trial court erroneously declared and applied the law in applying . section 516.100[2] to determine when the cause of action accrued for statute of limitations purposes. Specifically, the trial court found that the ten-year statute of limitations did not begin to run until the damage from the mistake in the legal· description was sustained and ascertained in 2001 when Mrs. Elton ordered a survey and, thus, the statute of limitations did not bar Mrs. Elton's claims for ejectment and reformation of deed. The Davises argue that the statute of limitations began to run when the alleged mistake was made, which was on or about November 6, 1987, when the deed was delivered. Secondly, the Davises contend that Mrs. Elton's claims of ejectment and reformation of deed were barred by the doctrine of laches because delay in bringing this suit was unreasonable and inexcusable and the delay materially prejudiced them.

The ten-year statute of limitations governs the causes of action in this case.[3] § 516.110.3; *A.P. Green Refractories Co. v. Duncan*, 659 S.W.2d 19, 20 (Mo.App. E.D.1983). The commencement of that period is governed by section 516.100, which provides in pertinent part:

the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment. . . .

Generally, the statute of limitations for reformation of deed will not run against a party in possession, at least until her right to possession has been challenged. *Bramhall v. Bramhall*, 216 S.W. 766, 769–70 (Mo.1919); *Stark v. Zehnder*, 204 Mo. 442,

---

**1.** This opinion does not address the Davises' points on appeal in the order presented in their brief.

**2.** All statutory references are to RSMo 2000 unless otherwise indicated.

**3.** The parties and the trial court incorrectly stated that the ten-year statute of limitations in section 516.010 governs in this case. The judgment of the trial court will be affirmed, however, if it reached a correct result, even though for an incorrect reason. *Commerce Bank of Kansas City, N.A. v. Peabody Coal Co.*, 861 S.W.2d 569, 576 (Mo.App. W.D.1993).

102 S.W. 992, 995 (1907); *Epperson v. Epperson*, 161 Mo. 577, 61 S.W. 853, 854 (1901); *Duncan*, 659 S.W.2d at 21.

The evidence in this case showed that Mrs. Elton has been in continuous, peaceable, and uninterrupted possession of the western fifty-three feet of the deeded property since before 1987 when the deed was delivered. Mrs. Elton testified that she believed she and her husband owned the fifty-three foot section of land. After delivery of the deed, Mr. Elton continued to farm the land until his death in 1995. Thereafter, Mr. Swaney continued to farm the land for Mrs. Elton up to time of trial. Although evidence was offered that, after Mr. Elton's death, Mr. Davis parked vehicles in the field occasionally during the wintertime, this intermittent encroachment did not constitute a challenge to Mrs. Elton's right of possession. Not until Mrs. Elton commissioned a survey in 2001 did she learn that the legal description in the original deed included the fifty-three foot section of property. The damage resulting from the mistake in the legal description was not, therefore, sustained and ascertainable until 2001 when the survey results were made known to Mrs. Elton. Thus, Mrs. Elton's causes of action did not accrue, and the ten-year statute of limitations did not begin to run, until July 2001. The statute of limitations, therefore, did not bar Mrs. Elton's cause of actions.

Neither were Mrs. Elton's causes of actions barred by laches. " 'Laches' is the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done." *Hagely v. Board of Educ. of Webster Groves School Dist.*, 841 S.W.2d 663, 669 (Mo. banc 1992). Mere delay does not of itself constitute laches; instead, the delay involved must work to the disadvantage and prejudice of the defendant. *Id.* "Where no one has

been harmed in any legal sense, and the situation has not materially changed, the delay is not fatal." *Id.* at 669–70. Laches is a question of fact to be determined from all the evidence and circumstances presented at trial. *Id.* at 670. Generally, the trial court must determine whether the harm to the defendant in allowing the suit to proceed outweighs the harm to the plaintiff in failing to consider her claims. *Id.*

As discussed above, although the original deed was executed in 1987, Mrs. Elton was not aware of any mistake in the legal description in the deed until she ordered a survey in July 2001. She then initiated her action against the Davises in April 2002. Mrs. Elton was not to blame for the delay in bringing this suit.

Furthermore, the delay in bringing the suit did not prejudice the Davises. The reformed deed shifted the Davises two-acre lot to the east by fifty-three feet. It encompassed the property that the Davises have occupied since 1987 and improved with a swimming pool, satellite dish, and septic system. Mr. Davis testified that if the deed were reformed, his business of automotive body repair would be shut down because he would not have access to his buildings on the west side of the property. However, he also testified that most motor vehicles required eight feet of clearance from the western property line to access those buildings. The evidence showed that the distance from the western boundary line in the original legal description to the Davises buildings was 61.58 feet. The reformed deed moved the western boundary line east fifty-three feet. A clearance of 8.58 feet, therefore, remained for the Davises to access the west sides of their buildings with vehicles. Allowing Mrs. Elton's suit to proceed did not prejudice the Davises' legal position.

The first two points are denied.

## II. REFORMATION OF DEED

 In their next point on appeal, the Davises claim that the trial court erred in entering judgment in favor of Mrs. Elton on her claim for reformation of deed. They argue that the judgment was not supported by substantial evidence, was against the weight of the evidence, and erroneously applied the law because Mrs. Elton failed to prove the necessary elements for reformation of deed. Specifically, the Davises claim that they and Mrs. Elton had no prior agreement to convey the land with the reformed description and no mutual mistake of fact occurred in the preparation of the deed.

 Reformation allows parties to a contract to conform the writing to their intent. *Everhart v. Westmoreland,* 898 S.W.2d 634, 637 (Mo.App. W.D.1995). It is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake. *Morris v. Brown,* 941 S.W.2d 835, 840 (Mo.App. W.D.1997). The existence of a prior agreement and mutual mistake are the primary factual issues to be established in a case for reformation based on mistake. *Everhart,* 898 S.W.2d at 637. The party seeking reformation must show that the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the true prior intentions of the parties. *Id.* "The mistake must be mutual and common to both parties and must reveal that both parties did what neither intended." *Id.* To support reformation for mutual mistake, the evidence must be clear, cogent, and convincing and upon testimony entirely exact and satisfactory. *Morris,* 941 S.W.2d at 840.

Clear, cogent, and convincing evidence was presented to support a finding that the parties intended and believed that the property measured by Mr. Elton and described in the reformed deed was the property to be conveyed. Both Mrs. Elton and Mr. Davis testified that the Eltons agreed to sell and the Davises agreed to purchase approximately two acres of land. The evidence also showed that Mr. Elton determined the land to be conveyed to the Davises. Mrs. Elton testified that Mr. Elton measured the two-acre lot with his tractor computer starting on the east side of the property by the septic tank. Mr. Davis conceded that Mr. Elton laid out the land and most of the improvements on it for them while he worked in Edgerton. Both Mrs. Elton and Mr. Davis testified that the Davises improved and maintained the land measured by Mr. Elton as their own since the conveyance and that the Eltons continued to farm the land surrounding the two-acre lot as their own.

 Furthermore, clear, cogent, and convincing evidence was presented to support a finding that a mutual mistake was made in that the original legal description did not describe the land measured by Mr. Elton. The survey done in July 2001 showed that the land maintained by the Davises was situated approximately fifty-three feet east of the plot described in the original deed. The Davises contend that the fact that Mr. Elton started measuring the lot at a point west of the survey marker implies that he made a unilateral mistake in measuring and marking the boundaries of the property and that a unilateral mistake is not an adequate basis for reformation. According to the evidence, however, the measuring or marking of the land correctly reflected the parties' intent, and the mistake constituted the errant legal description in the deed of the land measured and marked. Other than Mrs. Elton's testimony that no survey was done at the time of the conveyance, no explanation appears in the record for why the original deed did not correctly describe the particular parcel of land to be conveyed as

agreed upon by the parties. The source of the mistake, however, is not relevant in a suit for reformation; instead, the fact of the mistake empowers the court of equity to act. *St. Louis County Nat'l Bank v. Maryland Cas. Co.*, 564 S.W.2d 920, 926 (Mo.App.1978). The legal description in the original deed described property that neither party intended be described. Reformation was, therefore, appropriate so that the deed accurately reflected the underlying agreement. The trial court did not err in reforming the deed. The point is denied.

### III. EJECTMENT

In their next point on appeal, the Davises claim that the trial court erred in ejecting them from all property not contained within the boundaries of the reformed legal description. They contend that Mrs. Elton failed to show actual damages resulting from their wrongful possession of the disputed property and, thus, she was entitled only to nominal damages. The Davises also argue that "balancing the equities" shows that ejectment from the disputed property would cause them great hardship in that they would have to move their swimming pool, septic system, and satellite dish and would be without access to the rear of their buildings.

"Ejectment is a possessory action testing the right to possession of real property." *Gilbert v. K.T.I., Inc.*, 765 S.W.2d 289, 293 (Mo.App. W.D.1988). To make a claim for ejectment, the plaintiff must show that the defendant was in possession of premises to which the plaintiff had the right of possession. *Smith v. Seamster*, 36 S.W.3d 18, 20–21 (Mo.App. W.D.2000). Appropriate relief in an ejectment suit may be a judgment for possession and damages. *Id.* at 21. Section 524.110 provides that damages can include those for waste, injury, rents, and profits,

subject to certain limitations on the length of time the damages can accrue. *Id.*

Contrary to the Davises' contention, the trial court's judgment did not award Mrs. Elton damages on her ejectment claim, only possession. Furthermore, an action for ejectment is not an equitable action but is an action at law. *City of Steelville v. Scott*, 684 S.W.2d 880, 886 (Mo.App. S.D.1984); *Blumenberg v. Minton*, 507 S.W.2d 26, 28 (Mo.App.1974). A court does not, therefore, conduct a balancing the equities analysis in such action. Even if such analysis were done in this case, the Davises were not caused great hardship. As discussed above, the reformed deed shifted the Davises' two-acre lot to the east by fifty-three feet. The property described in the corrected legal description encompassed the improvements made by the Davises including the swimming pool, septic system, and satellite dish; therefore, the improvements do not need to be moved. A clearance of 8.58 feet also remained on the western portion of the property for the Davises to access the rear of their buildings. The point is denied.

### IV. COUNTERCLAIM FOR ADVERSE POSSESSION

In their final point on appeal, the Davises claim that the trial court erred in adjudging its counterclaim for adverse possession moot. In their counterclaim, the Davises claimed adverse possession of land to the east and north of the land described in the original deed. They claimed the land approximately 58.75 feet east of the eastern boundary identified in the original deed description and a small pie-shape piece of property to the north of the reformed description. After entering its judgment reforming the legal description in the deed, the trial court found that the Davises' counterclaim for adverse pos-

**214**

session was moot in light of the reformed legal description.

■ A case is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. *State ex rel. Reed v. Reardon,* 41 S.W.3d 470, 473 (Mo. banc 2001)(quoting *Shelton v. Farr,* 996 S.W.2d 541, 543 (Mo.App. W.D.1999)). Where an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed. *Id.* (quoting *Armstrong v. Elmore,* 990 S.W.2d 62, 64 (Mo.App. W.D.1999)).

The trial court correctly found that reformation of the deed rendered moot the Davises' counterclaim for adverse possession of the land described in the reformed legal description. Reformation of the deed provided the Davises title to part of the land it claimed by adverse possession. Therefore, a ruling by the trial court on the Davises counterclaim for that particular land would have been unnecessary. The Davises, however, sought title by adverse possession of land outside the boundaries of the lot described in the reformed deed; specifically, an additional 5.75 foot wide strip of land on the eastern boundary and a pie-shape strip of land on the northern boundary of the lot described in the reformed deed. Reformation of the deed did not, therefore, determine the Davises' counterclaim for adverse possession of the land outside the boundaries of the land described in the reformed deed. That part of the judgment is, therefore, reversed, and the case is remanded for determination of the Davises' counterclaim as it applies to those strips of land.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

SMART, P.J. and HARDWICK, J. concur.