**CARDINAL PARTNERS,
LLC, Appellant,**

v.

**DESCO INVESTMENT COMPANY,
L.L.C., Respondent.**

No. ED 92842.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 19, 2010.

Noel A. Sevastianos, St. Louis, MO, for appellant.

Edward L. Dowd, Jr., Robert F. Epperson, Jr., St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

Cardinal Partners, LLC presently owns the Chariton Square Shopping Center in the City of St. Louis (the property). Desco Investment Company, L.L.C. originally owned the property and inserted a restrictive covenant governing the property's use when it transferred the property. The present owner filed a declaratory-judgment action against the original owner, seeking a declaration that the restrictive covenant the original owner inserted in a special warranty deed is invalid as a matter of law, and therefore, unenforceable. The original owner responded, maintaining that the covenant was enforceable, or in the alternative should be reformed. Each party filed a motion for summary judgment. The trial court granted the original owner's motion, reformed the restrictive covenant, and denied the present owner's motion. The present owner appeals the summary judgment entered by the Circuit Court of the City of St. Louis in favor of the original owner. We reverse and remand because the original owner has not established its entitlement to reformation of the restrictive covenant as a matter of law.

*Factual and Procedural Background*

The property contains a building where Schnuck Markets, Inc. operated a supermarket from 1968 to about 1991. No supermarket has operated on the property since the Schnucks store closed although two other Schnucks supermarkets currently operate within three miles of the property.

In 1999, the original owner entered an agreement to sell the property, and conveyed the property to Chariton Square Shopping Center, L.L.C. (the original buyer) via a special warranty deed. The deed, in conformance with the sales agreement for the property, contained a restrictive covenant, which provided that no full-line grocery store, supermarket, or drug store could operate on the property.[1] The original buyer conveyed the property to another purchaser in 2004, and the present owner then bought the property in 2005 with

---

1. The covenant reads:

 Grantor and Grantee agree that all of the Property shall be held, conveyed, hypothecated or encumbered, leased, rented, used, occupied, and improved subject to the following limitations, restrictions, conditions, and covenants: In no event may the Property be utilized for or in conjunction with the operation of any full line grocery or supermarket store or drug/pharmaceutical store, whether for the sale of prescription or over-the-counter medications and whether sold alone or as part of a full line drug/pharmaceutical store. These restrictions and covenants are hereby declared to be covenants running with the land and shall be fully binding upon all persons acquiring any interest in the Property, whether by descent, devise, purchase, lease or otherwise and any person by the acceptance of title to or possession of the Property shall thereby agree and covenant to abide by and fully perform the foregoing covenants and restrictions. Provided, however, nothing herein shall restrict the sale of grocery products and/or over-the-counter drugs on the Property by a convenience store consisting of no more than Four Thousand (4,000) square feet of gross leasable space, or the operation of any drug/pharmaceutical store consisting of no more than Two Thousand (2,000) square feet of gross leasable space.

the restrictive covenant in place. Shortly thereafter, the present owner filed a declaratory-judgment action against the original owner, seeking a declaration that the restrictive covenant is invalid as a matter of law, and therefore, unenforceable.

The original owner maintained that the restrictive covenant was enforceable as drafted. As an alternative strategy, the original owner filed a second-amended counterclaim, averring that it was the intention of both the original owner and the original buyer to include in the special warranty deed a valid, reasonable, and fully enforceable restriction on the use of the property for the benefit of Schnuck Markets. In the event the court determined the restriction was unenforceable as drafted, the original owner sought reformation of the restrictive covenant. The original owner asked that language be added to provide that the restriction benefited Schnuck Markets, and to provide reasonable limitations on time and geographic area. Specifically, the original owner asked the trial court to reform the restrictive covenant to state that it was made for the benefit of Schnuck Markets, to limit its duration to 25 years, and to apply only so long as a Schnucks supermarket operates in Missouri within five miles of the property.

Each party filed a motion for summary judgment. In its motion, the original owner claimed that it and the original buyer understood the restrictive covenant was for Schnucks Markets' benefit. The original owner maintained that the restriction was reasonable and enforceable, but if the court were to find its terms unreasonable, then the original owner sought reformation as requested in its second-amended counterclaim. The original owner asserted that the court has the equitable power to reform the restrictive covenant as pro-

posed, to render it reasonable or to correct a mutual mistake.

The original owner argued in support of its motion that if the court were to determine the restrictive covenant unenforceable as written, "then a mutual mistake clearly occurred between [the original owner] and the [original] buyer of the [p]roperty at the time they agreed to the Sale Agreement and Special Warranty Deed." The original owner pointed to the sales agreement as "conclusive evidence" of the intent of the original owner and the original buyer. It pointed to the sale of another shopping center by Schnuck Markets to the original buyer on the same day as "direct evidence" that the restriction's purpose was to benefit Schnuck Markets. The original owner, however, produced no affidavit, deposition testimony, or other evidence from the original buyer as to its intent regarding the restrictive covenant when it bought the property.[2] The original owner asserted that the evidence clearly demonstrated the basic assumption shared by the original owner and the original buyer to include a valid restriction on the property for the benefit of Schnuck Markets. Should the court deem the restriction too broad, the original owner argued, then the parties shared a misconception about the restriction's validity. Thus, the original owner asserted that reformation would be appropriate to address that misconception and to correct the restrictive covenant to properly reflect and effectuate the intent of the original owner and original buyer.

The trial court granted the original owner's motion. The court found reformation to be an appropriate remedy because the restriction was not limited with regard to duration or proximity to a Schnucks supermarket. The court found that "[b]oth par-

2. The original buyer never became a party to the action.

ties to the original Special Warranty Deed clearly intended to create a restriction as to the use of the [p]roperty, they merely failed to include a reasonable limitation as to time and space." The trial court further elaborated that "[r]eformation would protect the essentials of the commercial planning and finance which the initial parties contemplated while preventing an admixture of prohibitions ad infinitum, the latter of which commonsense [sic] can demonstrate has a generally negative effect on free commerce." The court found equitable grounds to grant relief—although it did not identify the precise nature of those grounds—as well as the presence of mutual mistake. Consequently, the trial court reformed the restrictive covenant, limiting its application to 25 years and only for so long as a Schnucks supermarket operates in Missouri within five miles of the property.[3] The trial court, however, determined that it would be presumptuous to order the restriction as made for the benefit of Schnuck Markets, especially when Schnuck Markets was not a party to the case. The trial court simultaneously denied the present owner's motion for summary judgment. The present owner appeals.

*Discussion*

In three points on appeal, the present owner claims that the trial court erred in granting the original owner's motion for summary judgment, that the lack of evidence regarding mutual mistake made the deed's reformation arbitrary, capricious, and unreasonable, and that the trial court erred in denying the present owner's motion for summary judgment.

Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo. *Id.* When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *Id.* Thus, we afford the benefit of

---

3. The full text of the restrictive covenant, as reformed, reads:

Grantor and Grantee agree that all of the Property shall be held, conveyed, hypothecated or encumbered, leased, rented, used, occupied, and improved subject to the following limitations, restrictions, conditions, and covenants: In no event may the Property be utilized for or in conjunction with the operation of any full line grocery or supermarket store or drug/ pharmaceutical store, whether for the sale of prescription or over-the-counter medications and whether sold alone or as part of a full line drug/pharmaceutical store. **These restrictions and covenants are hereby declared to be covenants running with the land and shall be fully binding upon all persons acquiring any interest in the Property, whether by descent, devise, purchase, lease or otherwise, and any person by the acceptance of title to or possession of the Property shall thereby agree and covenant to** abide by and fully perform the foregoing covenants and restrictions. **These restrictions and covenants are limited as follows: (1) they shall run with the land for a period not to exceed twenty-five (25) years from the date of this Special Warranty Deed; (2) they shall cease to apply in the event that there is no longer a supermarket owned or leased and operated by Schnuck Markets, Inc., in operation, in Missouri, within five (5) miles of the Property; and (3)** nothing herein shall restrict the sale of grocery products and/or over-the-counter drugs on the Property by a convenience store consisting of no more than Four Thousand (4,000) square feet of gross leasable space, or the operation of any drug/pharmaceutical store consisting of no more than Two Thousand (2,000) square feet of gross leasable space.
(Emphasis added to identify the new provisions entered by the court's reformation of the covenant.)

all reasonable inferences to the non-movant. *Id.*

The adage that we view the record "in the light most favorable to the non-movant" means that the movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted. *Id.* at 382. Any evidence in the record that presents a genuine dispute as to the material facts defeats the movant's prima facie showing. *Id.* Similarly, the rule that we give the non-movant the benefit of all reasonable inferences means that if the movant requires an inference to establish the right to judgment as a matter of law, and the evidence reasonably supports any inference other than, or in addition to, the movant's inference, a genuine dispute exists, and the movant's prima facie showing fails. *Id.*

■ In its first point, the present owner claims the trial court erred in granting the original owner's motion for summary judgment because the original owner "utterly failed to establish the mutuality of several mistakes regarding the restrictive covenant." In its second point, the present owner claims the lack of evidence regarding mutual mistake makes any reformation of the deed arbitrary, capricious, and unreasonable because the record is replete with issues of genuine material fact. We consider these points together.

The original owner's second-amended counterclaim pleaded mutual mistake as the sole basis for reformation of the restrictive covenant. The original owner's summary-judgment motion, however, contended that the trial court had the power to reform the restriction based both upon its general equitable powers and upon mutual mistake. The original owner argued that the court's equitable power allowed it to reform the restrictive covenant to make it reasonable, and analogized and cited to cases where the courts reformed covenants not to compete.[4]

■ The original owner's argument regarding the court's general equitable power appears to rest on the abstract principle that equitable remedies are flexible and may be molded to meet the needs of justice. *Lake Wauwanoka, Inc. v. Spain,* 622 S.W.2d 309, 312 (Mo.App. E.D.1981). However, a court may reform a restrictive covenant in a deed only upon proof of fraud or mistake. *Citibrook II, L.L.C. v. Morgan's Foods of Mo., Inc.,* 239 S.W.3d 631, 634 (Mo.App. E.D.2007); *Lake Wauwanoka,* 622 S.W.2d at 314. *See also, Morris v. Brown,* 941 S.W.2d 835, 840 (Mo.App. W.D.1997) ("Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake.") Here, the original owner claims mutual mistake, asserting

4. The original owner cites *Duncan v. Academy of Sisters of the Sacred Heart at St. Joseph, Mo.,* 350 S.W.2d 814, 819–20 (Mo.1961), for the proposition that "Missouri courts have exercised this [general equitable] power by employing the rule of reasonableness to judicially modify restrictive covenants." The Duncan Court, however, did not reform a restrictive covenant in a deed. Rather, the Duncan Court refused to exercise its equitable power to grant the plaintiffs an injunction to enforce a restrictive covenant against the defendant. *Id.* Among its reasons for refusing to grant an injunction, the Court stated that it would be inequitable to enforce such a restrictive covenant, which "had been rigidly observed for at least 106 years." *Id.* at 819. In this context, the Court observed that where the duration of a restrictive covenant was not expressly limited by the parties, the court should imply that some limitation was intended, and that it was such as the nature of the case indicates is reasonable. *Id.* at 819–20. Duncan, in refusing to grant equitable relief, is thus distinguishable from the instant case where the trial court actually reformed the restrictive covenant in the deed.

that the original owner and the original buyer intended to include in the special warranty deed a valid, reasonable, and fully enforceable restriction on the property's use. The original owner contended that if the restriction is held unenforceable, then "a mutual mistake clearly occurred between [the original owner] and the [original] buyer." While the original owner argued, both on summary judgment and on appeal, that the court has general equitable power to reform the restrictive covenant, the original owner's only *pleaded claim* rests on mutual mistake.

 A mistake affording grounds for reformation must be mutual and common to both parties to the instrument, and it must appear that both have done what neither intended. *State ex rel. State Highway Comm'n v. Schwabe*, 335 S.W.2d 15, 19 (Mo.1960) (quoting *Walters v. Tucker*, 308 S.W.2d 673, 675 (Mo.1958)). Mutual mistake exists when both parties have memorialized in writing what neither actually intended. *St. Louis Realty Fund v. Mark Twain South County Bank 21*, 651 S.W.2d 568, 572 (Mo.App. E.D.1983). The court can reform a written instrument only upon clear, cogent, and convincing evidence that leaves no room for reasonable doubt. *Id.* This degree of proof relates not only to the existence of a mutual mistake, but also to establishment of the actual agreement allegedly made. *Id.* at 572–73. To support reformation of a deed for mutual mistake, the party seeking reformation must show that: 1) a preexisting agreement between the parties affected by the proposed reformation is consistent with the change sought; 2) a mistake was made in that the deed was prepared other than as agreed; and 3) the mistake was mutual, i.e., it was common to both parties. *Morris*, 941 S.W.2d at 840.

 As a general rule, a court of equity will not grant relief against a mistake of law unmixed with any mistake of fact, but exceptions do exist. *Schwabe*, 335 S.W.2d at 20 (quoting *Corrigan v. Tiernay*, 100 Mo. 276, 13 S.W. 401, 401 (1890)). If an agreement is what the parties intended, equity will not interfere because the parties did not understand its legal effect. *Id.* (quoting *Corrigan*, 13 S.W. at 401–02). However, where the instrument as reduced to writing fails to express the contract the parties actually entered, equity will reform the contract, even when the instrument fails to express the parties' contract by reason of a mistake of law. *Id.* (quoting *Corrigan*, 13 S.W. at 402).

 In short, if a written instrument fails to express the intention the parties had in making the contract that the instrument purports to contain, equity will grant relief although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language used in the writing. *Id.* (quoting *Corrigan*, 13 S.W. at 402). Thus, even when the parties erroneously believe that the words used in an instrument are legally effective to secure a certain result, with the mistake being one of law, equity will correct such a mutual mistake, provided it is shown by clear and convincing evidence. *Id.* at 21.

We must reverse the trial court's summary judgment in favor of the original owner and accompanying reformation of the restrictive covenant. On summary judgment, the non-movant receives the benefit of all reasonable inferences. *ITT*, 854 S.W.2d at 376. This means that if the movant requires an inference to establish the right to judgment as a matter of law, and the evidence reasonably supports any inference other than, or in addition to, the movant's inference, a genuine dispute exists. *Id.* at 382. The movant's prima facie showing fails, and summary judgment is not warranted. *Id.*

The trial court granted the original owner's motion for summary judgment and reformed the deed, with one exception, according to the original owner's request. In determining reformation to be an appropriate remedy, the trial court expressly found that *"[b]oth parties to the original Special Warranty Deed clearly intended to create a restriction as to the use of the [p]roperty,* they merely failed to include a reasonable limitation as to time and space" (emphasis added). Yet the record contains no affidavit, deposition testimony, or other evidence from the original buyer about its understanding or intent at the time it purchased the property. Indeed, the record has no direct evidence of the original buyer's understanding or intent. Furthermore, the original buyer was not a party to this action. Thus, on the record submitted, the trial court could make such a finding only by drawing inferences regarding the original buyer's understanding and intent. The inferences the trial court had to draw to reach its decision favor the original owner, the movant for summary judgment, which is not permissible.

The original owner points to the language of the sales agreement and deed as conclusive evidence of the parties' intent. But this argument assumes that the original buyer intended the restrictive covenant to be legally effective. One could just as easily infer that the original buyer, like the present owner, agreed to the restrictive covenant believing it to be unenforceable. Put differently, the language of the parties' agreement is, in a general way, evidence of their intent, but it is not evidence of a *mutual* mistake. We have no direct evidence that the original buyer was operating under any mistaken belief in fact or law. Because the non-movant, here the present owner, must be afforded the benefit of all reasonable inferences, this inference that the trial court necessarily drew in favor of the movant cannot be used to grant summary judgment for the original owner.

██ Further, we reject the trial court's grant of reformation based on general "equitable grounds" for two reasons. First, the original owner's second-amended counterclaim pleaded only mutual mistake. Second, Missouri authority provides that a restrictive covenant in a deed may be reformed only on the bases of fraud or mistake. *Citibrook,* 239 S.W.3d at 634; *Lake Wauwanoka,* 622 S.W.2d at 314; *Morris,* 941 S.W.2d at 840. We grant the present owner's first and second points.

In its third point, the present owner claims the trial court erred in denying its motion for summary judgment, and should have declared the restrictive covenant void as a matter of law. Generally, denial of summary judgment does not constitute a final, appealable judgment. *Hussmann Corp. v. UQM Elec., Inc.,* 172 S.W.3d 918, 922 (Mo.App. E.D.2005). Some authority exists for the proposition that denial of summary judgment may be reviewable where the merits of the denial are intertwined with the propriety of an appealable grant of summary judgment to another party. *Id.* We decline to review the denial of summary judgment to the present owner because the original owner may yet be able to adduce sufficient evidence at trial of the original buyer's asserted mistake, entitling it to reformation of the restrictive covenant. We deny Point III as moot.

*Conclusion*

We conclude that in finding a mutual mistake, the trial court improperly afforded the original owner an inference that the original buyer shared the original owner's understanding and intent concerning the restrictive covenant. We also conclude that the trial court erred in finding general equitable grounds for reformation. We

decline to review the trial court's denial of the present owner's summary-judgment motion. We reverse the trial court's judgment and remand the cause for trial.

GLENN A. NORTON, P.J., and MARY K. HOFF, J., concur.