Shelley TATE, Appellant,

v.

**ONE BEACON INSURANCE COMPANY and Bald Eagle Company, Respondents.**

No. ED 94309.

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 28, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 17, 2010.

Application for Transfer Denied Jan. 25, 2011.

Thomas C. DeVoto, St. Louis, MO, for appellant.

Russell F. Watters, Kenneth R. Goleaner, St. Louis, MO, for respondents.

GARY M. GAERTNER, JR., Presiding Judge.

### Introduction

Shelley Tate (Tate) appeals from the judgment of the trial court granting summary judgment to One Beacon Insurance Company (One Beacon) in her action for Declaratory Judgment and Equitable Garnishment against One Beacon seeking satisfaction of judgment against its insured, Bald Eagle Company, stemming from her personal-injury lawsuit. She asserts that summary judgment was improper because the amended insurance policy created a separate and distinct policy which did not include the relevant exclusion, and because, even if there were a single policy, the amendment created an ambiguity that must be construed in favor of coverage. We affirm.[1]

### Background

The record viewed in a light most favorable to Tate is as follows. In 1999, Tate entered into a monthly rental agreement with Bald Eagle Company for the lease of a property in Salem, Missouri (the property). She complained several times about problems with the septic system, and in February 2004 there was a septic spill. During cleanup black mold was discovered inside her house. She sought emergency medical treatment in May 2004. She resided at the property until October 2004.

In August 2005, she filed a lawsuit against David Hellmuth and Bald Eagle Company stemming from injuries sustained due to the septic spill and exposure to toxic mold. The parties entered into a Release and Settlement Agreement whereby Tate released her claim against Hellmuth for a cash settlement, and agreed to seek satisfaction of any judgment obtained against Bald Eagle Company solely from its insurance policy issued by One Beacon. In October 2007, judgment was entered against Bald Eagle Company in the amount of $200,000. One Beacon denied coverage based on, inter alia, the policy's "Total Exclusion Fungi, Spore, Bacteria or Virus" clause (mold exclusion), which stated that insurance does not apply to any bodily or personal injuries caused, directly or indirectly, by mold.

In April 2008, Tate filed a Petition for Declaratory Judgment and Equitable Garnishment against One Beacon seeking satisfaction from One Beacon for the judg-

1. Tate's motion to strike portions of One Beacon's legal file is denied as moot. One Beacon's motion to strike Tate's brief and to dismiss the appeal is denied.

ment rendered against its insured, Bald Eagle Company. She asserted that One Beacon's insurance policy provided coverage for her injuries because, inter alia, the mold exclusion did not apply. Specifically, she asserted that when One Beacon "amended" its insurance policy, effective August 2004, in a document that did not include the mold exclusion, it eliminated that exclusion.

Both Tate and One Beacon moved for summary judgment, and the record included the following. One Beacon issued an insurance policy, Policy No. QG QF49934–02, to the insureds "Mildred and Theodore Hellmuth Co–Trustee Under Several Family Trusts," effective December 2003 through December 2004 (Original Policy). The Original Policy provided for amendment of the policy's terms stating: "This policy contains all the agreements between you and us concerning the insurance afforded.... This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy." The Original Policy also included the mold exclusion in Form Number G15030 09 01, which stated in its entirety:

> This insurance does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or "personal and advertising injury" of any nature whatsoever, concurrently or non-concurrently caused by, arising out of, resulting from, contributed to, aggravated by, or in any way related to, directly or indirectly, in whole or in part, any fungi (including but not limited to any mold, mildew, yeast or mycotoxin), spore, bacteria or virus.
>
> This exclusion does not apply to "bodily injury" arising out of the ingestion of food, beverage, or FDA approved nutritional supplement or medication.

In October 2004, One Beacon issued a policy change for the Original Policy, effective August 2004 (Amended Policy). The Amended Policy identified itself as an "endorsement" that "form[ed] a part of the policy listed below [Policy No. QG QF49934–02]." It further stated that "[t]his endorsement does not change the policy except as shown." It noted that it had made changes to the named insureds, added additional named insureds (including Bald Eagle Company), corrected locations, deleted items and locations, added a farm office, and increased dwellings. The Amended Policy included a list of five forms and endorsements added or amended by these changes, and the Amended Policy packet included only these five documents. The mold exclusion, Form No. G15030 09 01, was not included on the list of "Forms and Endorsements added or amended" and was not attached to the packet. In December 2004, Policy No. QG QF49934–02 was renewed (as QG QF49934–03), and it incorporated both the changes introduced in the Amended Policy and the provisions of the Original Policy, including the mold exclusion.

For summary judgment, Tate asserted as follows. The Amended Policy was fully integrated within its four corners, replacing rather than supplementing the Original Policy. The Amended Policy included declarations that substantially defined the insurer's liability, coverage, limitations, and exclusions. While it retained some exclusions, it did not include, and thus eliminated, the mold-exclusion provision.

Likewise, One Beacon argued that it was entitled to summary judgment as a matter of law because, as relevant to this appeal, the mold exclusion in the Original Policy was not eliminated by the Amended Policy and thus precluded recovery for Tate. One Beacon contended the Amended–Policy package was not the entire, fully integrated policy. Rather it argued that the Amended Policy had identified the

changes made to the Original Policy, and removing the mold exclusion was not one of the changes. Further, the Amended Policy specifically noted that the package contained only the five identified modified forms and endorsements, and it stated that "[t]his endorsement forms a part of the policy listed below."

The trial court granted summary judgment in favor of One Beacon, and denied Tate's motion for summary judgment. Tate timely appealed.

### Standard of Review

Summary judgment is appropriate where the moving party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine issue of material fact. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* at 382. Our review is essentially de novo. *Cardinal Partners, L.L.C. v. Desco Inv. Co.*, 301 S.W.3d 104, 108 (Mo.App. E.D.2010). When considering an appeal from summary judgment, we view the record in the light most favorable to the party against whom judgment was entered, and we afford the non-movant the benefit of all reasonable inferences from the record. *Id.* at 108–09.

■ The interpretation of an insurance policy is a question of law that we also review de novo. *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 46 (Mo. banc 2009). In construing the terms of an insurance policy, courts apply the meaning that would be attached by an ordinary person of average understanding if purchasing insurance, and resolve all ambiguities in favor of the insured. *Id.*

### Discussion

#### Point I

In her first point on appeal, Tate argues the trial court erred in granting summary judgment to One Beacon, because the Amended Policy created a separate, distinct and fully integrated insurance policy, which did not include a mold exclusion, thus insuring Bald Eagle Company for the damages sustained by Tate. We disagree.

■ The Amended Policy modified rather than replaced the Original Policy. The Original Policy provided that any changes would be made via endorsement and would be "made a part of this policy." The Amended Policy stated it was an endorsement that "form[ed] a part of the [Original Policy]," and it had the same policy number as the Original Policy. The Amended Policy specifically stated that it "[did] not change the policy except as shown," and it identified the five forms and endorsements that were affected by the amendments. The Amended–Policy packet included copies of only those five sections. Form No. G15030 09 01, the mold exclusion, was not listed as a form affected by the amendments, and it was not included in the Amended–Policy packet. Finally, the December 2004 renewal policy incorporated both the changes introduced in the Amended Policy and the provisions of the Original Policy, including the mold exclusion. The plain, unambiguous language of the insurance contract demonstrates that the Amended Policy modified rather than replaced the Original Policy. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). Thus, the provisions of the unamended Original Policy, including the mold exclusion, were still effective.

Point denied.

## Point II

In her second point on appeal, Tate argues that the trial court erred in granting summary judgment to One Beacon because, even if it were a single amended policy, the amended portion created an ambiguity regarding the applicability of the mold exclusions that must be resolved in favor of the insured. Tate suggests because Bald Eagle Company was not a named insured in the Original Policy, which set forth the mold exclusion, that disparity created an ambiguity as to whether the mold exclusion applied to Bald Eagle Company once it was amended as a named insured into the contract. We disagree.

The mold exclusion states in plain, unambiguous language that the insurance agreement does not provide coverage for injuries caused by, arising from, contributed to, or in any way related to—directly or indirectly—mold. This same mold exclusion applies to both the Original Policy and the Amended Policy without discord. Contrary to Tate's argument, our review of the insurance policy in its totality reflects no ambiguity. The Amended Policy incorporated Bald Eagle as an insured, subject to the liabilities and coverages of the entire insurance policy, including the mold exclusion. *Peters,* 853 S.W.2d at 302 (unambiguous policy provisions should be enforced as written, unless statute or public policy declare otherwise); *Williams v. Silvola,* 234 S.W.3d 396, 403 (Mo.App. W.D.2007) (in interpreting insurance policies, we do not read provisions in isolation but view entire policy as a whole); *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.,* 869 S.W.2d 145, 150 (Mo.App. E.D.1993) (in determining ambiguity, "words will be tested in light of the meaning which would normally be understood by the average layperson").

Point denied.

## Conclusion

The judgment of the trial court is affirmed.

MARY K. HOFF and PATRICIA L. COHEN, JJ., concur.