Schneider HUGHES, Appellant,

v.

BODINE ALUMINUM, INC., Respondent.

No. ED 94470.

Missouri Court of Appeals, Eastern District, Division Five.

Oct. 26, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 13, 2010.

Application for Transfer Denied Jan. 25, 2011.

Daniel J. McDaniel, St. Louis, MO, for appellant.

Patricia M. McFall, Brian M. O'Neal, St. Louis, MO, for respondent.

Before: GARY M. GAERTNER, JR., P.J., MARY K. HOFF, J., and PATRICIA L. COHEN, J.

## PER CURIAM.

### Introduction

On January 22, 2008, Anthony Dismuke, a supervisor at Bodine Aluminum, Inc. (Bodine) was terminated after an internal corporate investigation for "having been involved in soliciting and receiving favors from temporaries in exchange for improved employment stability." Dismuke had previously fired Schneider Hughes (Hughes) on November 27, 2006. Hughes filed an internal complaint the day he was terminated, alleging that he was discharged for refusing to comply with Dismuke's requests for bribes. The trial court granted summary judgment to Bodine in Hughes's subsequent wrongful-discharge employment action. Hughes appealed. The issues in this case are whether there were genuine issues of material fact to support his contention of termination for refusal to comply with commercial bribery, and whether Hughes's termination under these circumstances violated Missouri's public-policy exception to the at-will employment statute. We reverse and remand.[1]

### Background and Procedure

Hughes filed his third amended petition for damages asserting wrongful discharge in violation of public policy for refusing to assist Dismuke and others in the commission of the crime of commercial bribery under Section 570.150.[2] In the alternative, he would have been guilty of criminal conspiracy under Section 564.016 or as an accomplice under Section 562.041. Bodine moved for summary judgment, and the record reflects the following through pleadings, depositions, and affidavits.

1. Bodine's motion to strike Hughes's supplemental legal file, and motion to dismiss the appeal or to strike Hughes's statement of facts are denied.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

Hughes began working for Bodine in November 2005 through a temporary service company. Dismuke was the group leader in Hughes's department. While Hughes was employed as a temporary employee with Bodine, Dismuke would sometimes request that Hughes buy him lunch or drinks. Hughes ignored or rejected these requests. In February 2006, while Hughes was attending a Super Bowl party at Dismuke's home, Dismuke asked Hughes if he wanted to become a permanent employee. Dismuke then commented that a flat screen television would look nice on his wall. Hughes did not purchase Dismuke a flat screen television. Hughes applied for permanent employment with Bodine in August 2006, and was hired for a three-month probationary period on September 11, 2006.

In November 2006, shortly before his probationary period had run, Hughes was talking at work with Dismuke, Mark Kassing (a supervisor at Bodine to whom Hughes did not report), and another employee, when Kassing requested that Hughes buy a 12–pack of beer. Hughes objected and walked away. Dismuke walked with Hughes to his work station, and asked Hughes, "what about that TV," referencing the flat screen television. Hughes did not say anything. On November 27, 2006, Dismuke terminated Hughes's employment for alleged unsatisfactory work performance. Kassing was also present during the termination meeting.

Hughes went straight from the termination meeting with Dismuke and Kassing to the human resources department, where he complained about Dismuke's requests for the television in exchange for employ-

ment. After a subsequent internal corporate investigation of Hughes's complaint, Bodine's parent company closed the case "due to insufficient evidence to substantiate [Hughes's] claims." Following a corporate investigation of a similar complaint by another employee, in January 2008 Bodine terminated Dismuke and reprimanded Kassing for being "involved in soliciting and receiving favors from temporaries in exchange for improved employment stability."

For summary judgment, Bodine argued that the facts alleged did not fall into any of the public-policy exceptions to the at-will employment doctrine, which provides, inter alia, a cause of action for wrongful discharge if the employee was terminated for refusing to perform an illegal act or an act contrary to a strong mandate of public policy. Bodine asserted: (1) the conduct required of Hughes did not violate any statutes, because Hughes was the victim and not the perpetrator of the crime; (2) Hughes failed to produce evidence to establish an exclusive causal relationship between his discharge and the alleged violation of public policy[3]; (3) Hughes was actually terminated for unsatisfactory work performance; (4) Dismuke's requests did not amount to commercial bribery; and (5) there is no public policy against giving gifts to supervisors.

In opposition, Hughes argued that by refusing to offer Dismuke a bribe, he was refusing to commit commercial bribery, as an accomplice or as part of a conspiracy. The offering of a bribe is likewise criminalized by the commercial bribery statute. Section 570.150. Thus, his refusal placed him within the purview of the illegal-acts public-policy exception to the at-will em-

3. The case Bodine cited to for this proposition has since been overturned by the Missouri Supreme Court, which noted that the proper causal standard for the public-policy exception is, as is consistent with MAI 31.24 (em-ployment discrimination verdict director), whether the violation of public policy was a "contributing factor" in the discharge. *Fleshner v. Pepose Vision Institute*, 304 S.W.3d 81, 94–95 (Mo. banc 2010).

ployment doctrine. He further asserted whether Dismuke requested bribes from Hughes and whether Hughes was terminated for refusing to pay those bribes, are fact issues for the jury to decide. He submitted an affidavit attesting to the facts alleged above.

The trial court granted summary judgment to Bodine. Hughes timely appealed.

### Standard of Review

Summary judgment is appropriate where the moving party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine issue of material fact. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo. *Cardinal Partners, L.L.C. v. Desco Inv. Co.*, 301 S.W.3d 104, 108 (Mo.App. E.D. 2010). When considering an appeal from summary judgment, we review the record in a light most favorable to the party against whom judgment was entered, and we afford the non-movant the benefit of all reasonable inferences from the record. *Id.* at 108–09. Where the record shows two plausible but contradictory accounts of the necessary facts, there exists a genuine issue of material fact, making summary judgment inappropriate. *Ruppel v. City of Valley Park*, 318 S.W.3d 179, 184 (Mo.App. E.D.2010). Summary judgment should be used infrequently in employment discrimination cases, due to the fact-intensive nature of this type of case that often depends on inferences rather than direct evidence. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007).

### Discussion

Hughes's first point on appeal is that he presented evidence establishing a genuine issue of material fact as to whether he was terminated for refusing to comply with Dismuke's and Kassing's attempts at commercial bribery, and thus the trial court erred in granting summary judgment. In his second point on appeal, Hughes contends that his termination violated Missouri's public-policy exception to the at-will employment statute. We agree with both points, but address them out of order.

Missouri's employment-at-will doctrine has historically allowed an employer to discharge an at-will employee, for cause or without cause, without liability for wrongful discharge. *Drury v. Missouri Youth Soccer Ass'n, Inc.*, 259 S.W.3d 558, 565 (Mo.App. E.D.2008). However, Missouri courts have recognized certain exceptions to the employment-at-will doctrine, including the public-policy exception, which establishes a cause of action for an at-will employee who has been discharged by an employer in violation of a clear mandate of public policy. *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859, 871 (Mo.App. W.D. 1985). The four types of public-policy exceptions are: (1) refusing to perform an act contrary to a strong mandate of public policy or an illegal act; (2) reporting wrongdoing or violations of law or public policy by the employer or fellow employees to superiors or third parties; (3) acting in a manner public policy would encourage; or (4) filing a workers' compensation claim. *Drury*, 259 S.W.3d at 566; *Porter v. Reardon Mach. Co.*, 962 S.W.2d 932, 936–37 (Mo.App. W.D.1998).

At issue here is the first exception: refusing to perform an act contrary to a strong mandate of public policy or an illegal act. Both parties address the issue of who was the "victim" of Dismuke's bribery attempts, in an effort to establish whether Hughes was being asked to participate in an illegal act. This analysis, however, is unnecessary, because the facts alleged by Hughes violate a strong mandate of public policy against bribery. *Cf. Nat'l Exch. Bank v. Woodside*, 107 Mo.App. 47, 80 S.W. 715, 716 (1904) ("[a]ny agreement or understanding to pay extra compensation

for services rendered ... incidental to or by color of his official position, should be condemned as void, illegal, and repugnant to public policy"). Point granted.

 Having determined that the facts as alleged by Hughes could establish a cause of action for wrongful discharge under the public-policy exception, we address his first point that he presented sufficient evidence to establish a genuine issue of material fact as to his claim of wrongful termination. We must accept as true Hughes's pleadings and afford him the benefit of all reasonable inferences from the record. *Ruppel*, 318 S.W.3d at 184. Hughes was not required to prove that his refusal to engage in a violation of public policy was the sole cause, or even a substantial factor, in his termination. Rather, he must establish only that his refusal to engage in a violation of public policy was a "contributing factor" in the discharge. *Fleshner v. Pepose Vision Institute*, 304 S.W.3d 81, 94–95 (Mo. banc 2010); *cf. Daugherty*, 231 S.W.3d at 819–20.

Here, Hughes contended through deposition testimony and an affidavit that during a conversation about his future with Bodine, Dismuke indicated Hughes should buy him a television to remain employed; that Hughes did not comply with Dismuke's request; that Dismuke terminated Hughes's employment less than a week after Hughes did not comply with Dismuke's second request for the television; and that Dismuke was later terminated by Bodine for "soliciting and receiving favors." Hughes's affidavit included factual statements based on his personal knowledge, which would have been admissible as evidence. Rule 74.04(c)(2), (e); *Scott v. Ranch Roy–L, Inc.*, 182 S.W.3d 627, 634–36 (Mo.App. E.D.2005). Hughes's testimony may be subject to challenge at trial, but the trial court on summary judgment is not permitted to make credibility determinations, and must resolve all factual issues and make reasonable inferences in favor of the non-moving party. *Goff v. Fowler*, 323 S.W.3d 797 (Mo.App. W.D.2010). Thus, Hughes presented evidence sufficient to create a material issue of disputed fact that his refusal to engage in a violation of public policy was a contributing factor in the discharge, and summary judgment was inappropriate. Point granted.

### Conclusion

The judgment is reversed and remanded for further proceedings in accordance with this opinion.